**IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF IOWA**

UNITED STATES OF AMERICA,

     *Plaintiff,*

    v.

WUANITA SWEDLUND,

     *Defendant*.

Case No. 3:26-cv-57

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

1.     This is a civil action against Wuanita Swedlund for violations of the Animal Welfare Act ("AWA") and its implementing regulations.

2.     Ms. Swedlund holds an AWA "Class B" license issued by the U.S. Department of Agriculture ("USDA") to breed and sell dogs at her Farmington, Iowa facility.

3.     Congress enacted the AWA for a number of purposes, including to ensure that animals used for exhibition purposes or bred for sale are provided humane care and treatment. 7 U.S.C. § 2131. The AWA imposes "minimum requirements" for handling, housing, feeding, watering, sanitation, and adequate veterinary care, among other requirements. *Id.* § 2143(a)(2)(A).

4.     A cornerstone of AWA enforcement is the unannounced inspection conducted by USDA's Animal and Plant Health Inspection Service ("APHIS"), which allows APHIS officials to accurately assess a licensee's compliance with the AWA, its regulations, and its standards, and ensure the wellbeing of AWA-regulated animals. Licensees are required during business hours to allow APHIS officials to enter the place of business to inspect and photograph the facilities, property, and animals. 7 U.S.C. § 2146(a); 9 C.F.R. § 2.126(a).

1

5.     Yet, Ms. Swedlund has failed to provide APHIS officials access to her facility the last five times APHIS officials have attempted to inspect between November 2025 and May 2026, preventing APHIS officials from inspecting the facility, records, and the dogs in Ms. Swedlund's care since December 2024. *See* Exs. A (November 20, 2025 Attempted Inspection Report), B (January 8, 2026 Attempted Inspection Report), C (February 26, 2026 Attempted Inspection Report), D (April 14, 2026 Attempted Inspection Report), E (May 5, 2026 Attempted Inspection Report).

6.     While this repeated failure to allow inspections is concerning on its own, Ms. Swedlund's history of AWA violations as well as a recent public complaint about Ms. Swedlund's facility compound that concern.

7.     The last time that APHIS inspectors were able to access Ms. Swedlund's facility on December 19, 2024, APHIS officials observed a dog with heavily matted fur across its body, dogs with no access to water, and an enclosure housing multiple dogs that was almost entirely covered with fecal matter. *See* Ex. F (December 19, 2024 Inspection Report).

8.     On April 27, 2026, APHIS received a public complaint about Ms. Swedlund's facility, which described an overwhelming smell upon entering Ms. Swedlund's facility that generated extreme concern for the condition of the dogs in Ms. Swedlund's care. Upon receiving this complaint, APHIS officials again attempted to inspect Ms. Swedlund's facility on May 5, 2026, but were unable to access Ms. Swedlund's facility to assess the condition of her animals. *See* Ex. E (May, 5, 2026 Attempted Inspection Report).

9.     In light of Ms. Swedlund's repeated failure to allow access to her facility, APHIS issued Ms. Swedlund a Notice of 21-Day Suspension of License documenting these violations and suspending her license on May 21, 2026, which was served on Ms. Swedlund on June 5,

2026. *See* Ex. G (Official Notice of 21 Day Suspension of License). The 21-Day Suspension will no longer be in effect beginning on June 27, 2026.

10.    For the following reasons, the United States seeks a declaration that Ms. Swedlund is violating the AWA by refusing to allow APHIS officials to inspect her facility, animals, and records. The United States also seeks injunctive relief, including a temporary restraining order and preliminary injunction, requiring Ms. Swedlund to allow APHIS officials to inspect her facility, animals, and records.

<b>JURISDICTION AND VENUE</b>

11.    The Court has jurisdiction over this action pursuant to 7 U.S.C. § 2146(c) (actions arising under the AWA); 28 U.S.C. § 1331 (federal question jurisdiction); and 28 U.S.C. § 1345 (United States as plaintiff).

12.    Venue is proper in the United States District Court for the Southern District of Iowa pursuant to 28 U.S.C. § 1391(b) because Ms. Swedlund resides in this judicial district and a substantial part of the events or omissions giving rise to the claim occurred within this judicial district, in Farmington, Iowa.

13.    The Court may grant the requested relief under the AWA, 7 U.S.C. § 2146(c), 28 U.S.C. §§ 2201 and 2202 (declaratory and injunctive relief), and the Court's inherent equitable powers.

<b>THE PARTIES</b>

14.    The Plaintiff is the United States of America. Authority to bring this action is expressly vested in the Attorney General of the United States pursuant to 28 U.S.C. §§ 516 and 519 and 7 U.S.C. § 2146(c).

15.    Upon information and belief, Wuanita Swedlund is an individual whose address is

3

505 State Street, Farmington, IA 52626. Ms. Swedlund owns, deals in, and/or breeds the animals that are the subject of this action in the Southern District of Iowa.

## LEGAL BACKGROUND

16.     The AWA establishes minimum standards of care and treatment to be provided for certain animals bred and sold for use as pets, used in biomedical research, transported commercially, or exhibited to the public. *See generally* 7 U.S.C. § 2131 *et seq*. It was enacted to "insure that animals intended . . . for use as pets are provided humane care and treatment." *Id.* § 2131(1).

17.     The AWA is administered by the Secretary of Agriculture or her representative. 7 U.S.C. §§ 2132(b), 2146. The AWA authorizes the Secretary to "promulgate such rules, regulations, and orders as he may deem necessary in order to effectuate the purposes of [the AWA]." *Id.* § 2151. The Secretary has delegated her authority to the APHIS Administrator. APHIS's Animal Care inspectors conduct inspections of facilities to determine compliance with the AWA and its implementing regulations.

18.     The AWA defines a "dealer" as "any person who, in commerce, for compensation or profit, delivers for transportation, or transports, except as a carrier, buys, or sells, or negotiates the purchase or sale of, (1) any dog or other animal whether alive or dead for research, teaching, exhibition, or use as a pet." 7 U.S.C. § 2132(f); *see also* 9 C.F.R. § 1.1 (definition of dealer).

19.     A Class "B" licensee is a person subject to AWA licensing requirements, who meets the definition of a "dealer," and whose business also includes the purchase and/or resale of any animal. *See* 9 C.F.R. § 1.1 (definition of Class "B" licensee).

20.     Anyone who falls within the statutory definition of a dealer must obtain and

maintain a valid license from the Secretary. 7 U.S.C. § 2134; *see also* 9 C.F.R. § 2.1(a)(1) (licensing requirements).

21.     The Secretary shall issue a license to a dealer upon application, provided that no such license shall be issued until the dealer has demonstrated that her facility complies with the standards promulgated by the Secretary pursuant to 7 U.S.C. § 2133.

22.     By signing the application form, the applicant acknowledges that she has reviewed the AWA and its regulations and standards and "agrees to comply with them." 9 C.F.R. § 2.2.

23.     The Secretary has promulgated regulations and standards to govern the humane handling, care, treatment, and transportation by dealers, which include the minimum requirements for handling, housing, feeding, watering, sanitation, ventilation, shelter from extreme weather and temperatures, adequate veterinary care, and separation by species. 7 U.S.C. § 2143(a)(1)-(a)(2)(A). Dealers must comply in all respects with the regulations and standards for the humane handling, care, treatment, and transportation of dogs. 9 C.F.R. §§ 3.1-3.20.

24.     The AWA requires the Secretary to make investigations and inspections as necessary to determine whether any dealer has violated any provision of the AWA or any regulation or standard issued thereunder. 7 U.S.C. § 2146(a). The AWA requires that "the Secretary shall, at all reasonable times, have access to the places of business and the facilities, animals, and those records required to be kept pursuant to section 2140 of this title of any . . . dealer." *Id.*

25.     Specifically, each dealer:

   [S]hall, during business hours, allow APHIS officials:

5

(1) To enter its place of business;
(2) To examine records required to be kept by the Act and the regulations in this part;
(3) To make copies of the records;
(4) To inspect and photograph the facilities, property and animals, as the APHIS officials consider necessary to enforce the provisions of the Act, the regulations and the standards in this subchapter; and
(5) To document, by the taking of photographs and other means, conditions and areas of noncompliance.

9 C.F.R. § 2.126(a).

26.     Additionally, "the use of a room, table, or other facilities necessary for the proper examination of the records and inspection of the property or animals must be extended to APHIS officials by the dealer . . . , and a responsible adult shall be made available to accompany APHIS officials during the inspection process." 9 C.F.R. § 2.126(b). Dealers must make, keep, and retain records for at least one year pertaining to the purchase, sale, transportation, identification, and previous ownership of the animal, which fully and correctly discloses information concerning the animal purchased or otherwise acquired, owned, held, leased, or otherwise in his or her possession or under his or her control, or which is transported, sold, euthanized, or otherwise disposed of (including records of any offspring). 7 U.S.C. § 2140; 9 C.F.R. §§ 2.75(b)(1)-(3), 2.80.

27.     Under the AWA, United States district courts "are vested with jurisdiction specifically to enforce, and to prevent and restrain violations of [the AWA], and shall have jurisdiction in all other kinds of cases arising under [the AWA]," except in one instance not applicable here. 7 U.S.C. § 2146(c).

**FACTUAL BACKGROUND**

28.     USDA issued Class B license number 42-B-0340 to Ms. Swedlund in July 2023. By signing the application form, Ms. Swedlund acknowledged that she had reviewed the AWA and its implementing regulations and standards and agreed to comply with them. *See* 9 C.F.R. §

6

2.2.

29.    Ms. Swedlund's repeated failure to grant APHIS officials access to inspect her facility is a violation of 7 U.S.C. § 2146(a) and 9 C.F.R. § 2.126.

30.    Ms. Swedlund has been cited for numerous violations of the AWA since she was issued her license in July 2023, including her recent recurrent failure to provide access to her facility.

31.    On December 21, 2023, an APHIS inspector identified ten AWA citations, including one critical noncompliance related to the deaths of eight puppies from three different litters.[1] Ex. H at 4-5 (Second December 21, 2023 Inspection Report); *see* 9 C.F.R. § 2.131(b)(1). A compliance investigator from the Iowa Department of Agriculture and Land Stewardship was also present at this inspection. Ms.. Swedlund informed the APHIS inspector that she found three French bulldog puppies deceased after feeling a strong cold draft at the front of their enclosure. Ex. H at 4. Ms. Swedlund placed duct tape over the source of the draft, but the APHIS inspector observed the tape peeling away from the wall and noted that a draft could still be felt at the time of inspection. *Id.* Three more puppies from a litter of Rottweilers were found deceased after Ms. Swedlund noticed the puppies were consistently wet from their mother's overgrooming, which caused Ms. Swedlund to suspect the puppies died from excessive cooling. *Id.* Another puppy was severely injured after a husky broke into an enclosure housing an Old English sheepdog named Megan and her newborn litter, which ultimately resulted in the puppy's euthanasia. *Id.* A week later, another one of Megan's puppies went

---

[1] A "critical" noncompliance is one that has a "serious or severe adverse effect on the health and well-being of the animal[s]." Animal Welfare Inspection Guide, USDA, 2-8, 2-9. (revised June 2025), https://www.aphis.usda.gov/sites/default/files/animal-welfare-inspection-guide.pdf ("APHIS Animal Welfare Inspection Guide"). A "direct" noncompliance is a critical noncompliance that is having a serious or severe adverse effect on the health and well-being of the animal at the time of the inspection. *Id.* at 2-9.

missing. Ms. Swedlund stated that she found a single bone of the puppy and assumed that Megan ate her puppy, which is abnormal behavior for a mother dog and could indicate stress. *Id.*

32.     Ms. Swedlund was also cited with a "direct" noncompliance for failing to provide proper veterinary care for several dogs in her care during the December 21, 2023 inspection. One Bichipoo puppy was observed walking with a severe limp and hard swelling on its leg. Ms. Swedlund stated that she wrapped the puppy's leg for five days after she was instructed to do so by a veterinarian, but Ms. Swedlund did not contact the veterinarian again despite the puppy's continued limping several weeks after removing the wrap. Ex. I at 28 (First December 21, 2023 Inspection Report); *see* 9 C.F.R. § 2.40(b)(2). Ms. Swedlund similarly failed to provide treatment for another French bulldog that was found to be lame at the time Ms. Swedlund received the dog two weeks prior. *Id.* During the inspection, the dog was observed limping and reluctant to move around its enclosure. *Id.* One French bulldog was also observed with an abnormal growth on its foot, which Ms. Swedlund failed to notice or adequately treat. Ex. H at 2; *see* 9 C.F.R. § 2.40(b)(2). In addition, Ms. Swedlund was cited for using expired and improperly stored medications and for missing medical records detailing when conditions were identified and how those conditions were treated. Ex. H at 2 ; *see* 9 C.F.R. §§ 2.40(b)(2), 3.13(b)(2).

33.     In addition, proper identification and required acquisition and disposition information for multiple dogs were either missing or incorrect during the December 21, 2023 inspection. Ex. H at 2-4. For example, acquisition records were missing the date of at least three dogs' deaths and the acquisition information for all adult dogs, including the name and address of the person from whom the dog was acquired from. *Id.*; *see* 9 C.F.R. § 2.75(a)(1). Multiple

puppies also lacked acceptable forms of identification, which are necessary to ensure APHIS officials' ability to identify animals and trace their movements. Ex. H a t2-3; *see* 9 C.F.R. § 2.50(a)(1), (a)(2)(i); *id.* § 2.75(a)(1)(vi).

34.      Several weeks later during an inspection of Ms. Swedlund's facility on January 4, 2024, an APHIS inspector identified seven noncompliant items, including several repeat citations from the December 2023 inspection. Ex. J (January 4, 2024 Inspection Report). An Iowa compliance investigator was present for this inspection as well. The APHIS inspector noted that multiple dogs still lacked proper identification and that records were still missing complete acquisition and disposition information. *Id.* at 3. The APHIS inspector also cited Ms. Swedlund for her continued failure to properly store medications and maintain complete records detailing medical conditions and how those conditions are treated. *Id.*

35.      At the same January 4, 2024 inspection, the APHIS inspector cited Ms. Swedlund for the sale and transport of a puppy that was less than eight weeks old. *Id.* at 4; *see* 9 C.F.R. § 2.130. In addition, the APHIS inspector found that Ms. Swedlund's facility did not have enough employees to maintain the minimum level of care required by the AWA. Ex. J at 4; *see* 9 C.F.R. § 3.12. At the time of inspection, Ms. Swedlund was the sole full-time caregiver for 111 adult dogs and 42 puppies with occasional help from her spouse.

36.      Following these two inspections, APHIS officials issued Ms. Swedlund an Official Warning for (1) failing to handle the animals in her care as expeditiously and carefully as possible in a manner that does not cause trauma, overheating, excessive cooling, behavioral stress, physical harm, or unnecessary discomfort, in violation of 9 C.F.R. § 2.131(b)(1); and (2) failing to establish and maintain a program of adequate veterinary care that includes the use of appropriate methods to prevent, control, diagnose, and treat diseases and injuries, and the

9

availability of emergency, weekend, and holiday care, in violation of 9 C.F.R. § 2.40(b)(2). Ex. K (January 25, 2024 Official Warning).

37.     On February 21, 2024, Ms. Swedlund signed a joint stipulation with the Iowa Department of Agriculture and Land Stewardship in which she agreed to decrease the number of dogs at the facility to no more than 30 adult dogs within 30 days until she maintained compliance for a minimum period of one year from the date of execution of the stipulation. Ex. L (February 21, 2024 Joint Stipulation).

38.     During APHIS's next inspection on April 4, 2024, an inspector identified only twelve dogs— two adult dogs and ten puppies—at Ms. Swedlund's facility. Ex. M (April 4, 2024 Inspection Report). Although disposition records indicated that over 100 dogs previously listed in the inventory for the facility were transferred to multiple other facilities, APHIS officials could not verify those records and therefore could not confirm where or to whom those dogs were transferred.

39.     The last time APHIS officials were able to access Ms. Swedlund's facility was on December 19, 2024, when an APHIS inspector conducted a routine inspection. Ex. F. Based on APHIS's inspection of her facility, Ms. Swedlund had in her possession, control, or care a total of eight adult dogs. *Id.* During this inspection, the APHIS inspector cited Ms. Swedlund for three noncompliant items, including failure to provide proper grooming to a dog that was observed with heavily matted fur across its body as well as failure to provide access to water to three dogs in their enclosures. *Id.* In addition, the APHIS inspector observed a sheltered portion of a primary enclosure housing three dogs with approximately 80% of the floor covered in fecal matter in violation of 9 C.F.R. § 3.11(a). *Id.*

40.     On or about August 12, 2025, an APHIS inspector arrived at Ms. Swedlund's

facility to conduct an inspection. When no contact was made at the facility, the APHIS inspector contacted Ms. Swedlund by phone and expressed her intent to inspect her facility. Ms. Swedlund stated that she was at the hospital with her child and was unavailable for inspection. In light of these circumstances and in keeping with USDA inspection guidance, Ms. Swedlund was not cited for an attempted inspection. *See* USDA Animal Welfare Inspection Guide (revised June 2025) at 4-14, https://www.aphis.usda.gov/sites/default/files/animal-welfare-inspection-guide.pdf.

41. On or about September 9, 2025, an APHIS inspector arrived at Ms. Swedlund's facility to conduct an inspection. When no contact was made at the facility, the APHIS inspector sent a text message to Ms. Swedlund asking if she was available for an inspection that day. On September 12, 2025, the APHIS inspector spoke with Ms. Swedlund by phone and she said she had been unavailable on September 9 due to a doctor's appointment. In light of these circumstances and in keeping with USDA inspection guidance, Ms. Swedlund was not cited for an attempted inspection.

42. On or about November 20, 2025, at approximately 1:00 PM, a responsible adult was not available to accompany an APHIS inspector to inspect Ms. Swedlund's facility. Ex. A. An APHIS inspector knocked on the door of Ms. Swedlund's residence and attempted to contact Ms. Swedlund by phone call and text message. Ms. Swedlund responded "Sorry can't talk" via text message. . After waiting approximately 30 minutes, the APHIS inspector left the facility. The APHIS inspector subsequently attempted to contact Ms. Swedlund by phone on November 21, 2025, and Ms. Swedlund sent a text message to the APHIS inspector that stated she was "At work[.]" The APHIS inspector attempted to contact Ms. Swedlund by phone again on December 1, 2025 and December 4, 2025, but did not receive a response. Ex. N (November

11

20, 2025 Attempted Inspection Checklist).

43. On or about January 8, 2026, at approximately 2:00 PM, a responsible adult was not available to accompany an APHIS inspector to inspect Ms. Swedlund's facility. Ex. B. An APHIS inspector knocked on the door of Ms. Swedlund's residence and attempted to contact Ms. Swedlund by phone call. Ms. Swedlund sent a text message to the APHIS inspector stating that she was at work, but did not respond when the APHIS inspector sent a text message asking if Ms. Swedlund was available for an inspection that day.

44. On or about February 12, 2026, Ms. Swedlund sent a text message to an APHIS inspector containing her work schedule for the following three weeks. On or about February 24, 2026, an APHIS inspector attempted to inspect Ms. Swedlund's facility at approximately 8:35 A.M., a time that aligned with the previously provided work schedule. However, a responsible adult was not available to accompany an APHIS inspector to inspect Ms. Swedlund's facility. The APHIS inspector knocked on the door of Ms. Swedlund's residence and attempted to contact Ms. Swedlund by phone call. Ex. C.

45. On February 25, 2026, APHIS officials issued an Official Warning to Ms. Swedlund for failing to provide access to her facility in violation of 9 C.F.R. § 2.126. Ex. O (February 25, 2026 Official Warning).

46. On or about February 16, 2026, Ms. Swedlund sent a text message to an APHIS inspector stating that she would be off work on March 2, March 6, and March 10. In an attempt to facilitate Ms. Swedlund's work schedule, APHIS inspectors planned to visit Ms. Swedlund's facility again for an inspection on or about March 6, 2026. However, at approximately 8:41 A.M. on March 6, 2026, Ms. Swedlund sent a text message to an APHIS inspector stating that she was not available that day because she got called into work and had a doctor's appointment.

12

47.     That same day, APHIS officials sent Ms. Swedlund an "unsatisfactory optimal hours letter," which informed her that the optimal hours during which she requested APHIS inspect her facility were considered insufficient to facilitate unannounced inspections. The letter also explained the importance of having someone available at the facility for an inspection and stated that until she designates appropriate optimal hours for inspection, APHIS officials will continue to inspect during regular business hours. Ex. P (March 6, 2026 Insufficient Optimal Hours letter).

48.     On or about April 14, 2026, at approximately 1:30 PM, a responsible adult was not available to accompany an APHIS inspector to inspect Ms. Swedlund's facility. Ex. D (April 14, 2026 Attempted Inspection Report). An APHIS inspector attempted to contact Ms. Swedlund by knocking on the door of her residence. The APHIS inspector's phone was not working at the time of the attempted inspection, so another APHIS official also attempted to contact Ms. Swedlund by phone call and by text message.

49.     On or about April 27, 2026, APHIS received a public complaint about Ms. Swedlund's facility, which described an overwhelming smell upon entering Ms. Swedlund's facility that generated extreme concern for the condition of the dogs in Ms. Swedlund's care. Upon receiving this complaint, an APHIS inspector again attempted to inspect Ms. Swedlund's facility on May 5, 2026, at approximately10:50 A.M., but a responsible adult was not available to accompany the APHIS inspector to inspect Ms. Swedlund's facility. The APHIS inspector knocked on the door of Ms. Swedlund's residence and attempted to contact Ms. Swedlund by phone call. Ex. E. Ms. Swedlund sent a text message to the APHIS inspector stating that she was at work and not available.

50.     In light of Ms. Swedlund's repeated failure to allow access to her facility, APHIS

issued Ms. Swedlund a Notice of 21-Day Suspension of License documenting these violations and suspending her license on May 21, 2026, which was served on Ms. Swedlund on June 5, 2026. *See* Ex. G.

51.     Because APHIS officials have not been able to complete an inspection of Ms. Swedlund's facility since December 2024, APHIS officials are unable determine whether the types of issues identified during the December 2024 inspection have been resolved or assess the health and welfare of the dogs at Ms. Swedlund's facility in light of the recent public complaint about Ms. Swedlund's facility.

## CLAIM FOR RELIEF

**Defendant Wuanita Swedlund has failed to provide access to inspect records, property, and animals in violation of 7 U.S.C. § 2146(a) and 9 C.F.R. § 2.126.**

52.     The United States incorporates by reference all allegations of the Complaint.

53.     As set forth above, Ms. Swedlund is violating the AWA and its implementing regulations by failing to provide APHIS officials with access to inspect records, property, and animals at her facility in violation of 7 U.S.C. § 2146(a) and 9 C.F.R. § 2.126.

54.     Unless enjoined, Ms. Swedlund will continue to violate the AWA and its implementing regulations and to prevent APHIS officials from verifying the well-being of the animals at Ms. Swedlund's facility.

55.     The United States is entitled to a declaratory judgment that Ms. Swedlund has violated the AWA and its implementing regulations by failing to provide APHIS officials access to her facility to conduct an inspection. 28 U.S.C. § 2201. The United States is entitled to an injunction to prevent and restrain Ms. Swedlund from operating in violation of the AWA and its implementing regulations and standards. 7 U.S.C. § 2146(c).

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court:

1. Declare that Ms. Swedlund has violated and continues to violate the AWA, 7 U.S.C. § 2146(a), and 9 C.F.R. § 2.126;

2. Preliminarily and permanently enjoin and restrain Ms. Swedlund from violating the AWA pursuant to 7 U.S.C. § 2146(c), specifically requiring Ms. Swedlund to:

   a. Allow APHIS officials, during business hours, to enter Ms. Swedlund's facility for unannounced inspections and ensure that a responsible adult is made available to accompany APHIS officials during the inspection process;

   b. Allow APHIS officials, during business hours, to examine records required to be kept by the AWA and its implementing regulations and standards, to make copies of the records, to inspect and photograph the facilities, property, and animals, as the APHIS officials consider necessary, and to document conditions and areas of noncompliance;

3. Preliminarily enjoin Ms. Swedlund from engaging in activity regulated by the AWA unless and until Ms. Swedlund comes into compliance with the AWA and the terms of the injunction;

4. Award the United States its costs in this action; and

5. Grant any other relief that the Court deems just and proper.


DATED: June 24, 2026                     Respectfully submitted,


                                         ADAM R.F. GUSTAFSON
                                         Principal Deputy Assistant Attorney General
                                         United States Department of Justice
                                         Environment & Natural Resources Division

                                         *Bonnie Ballard*
                                         BONNIE BALLARD
                                         Trial Attorney (MD Bar No. 2211280027)
                                         KAMELA A. CASCHETTE
                                         Senior Trial Attorney (NY Bar No. 5679188)
                                         MICHELLE SPATZ
                                         Senior Trial Attorney (DC Bar No. 1044400)
                                         Wildlife & Marine Resources Section
                                         P.O. Box 7611, Ben Franklin Station
                                         Washington, DC 20044-7611

15

bonnie.m.ballard@usdoj.gov
kamela.caschette@usdoj.gov
michelle.spatz@usdoj.gov
Phone: (202) 532-5567 (Ballard)
        (202) 598-7868 (Caschette)
        (202) 598-9741 (Spatz)
Fax: (202) 305-0275

*Attorneys for the United States of America*